C.A. No. 14-56344

In the United States Court of Appeals
for the Ninth Circuit

M.C., By and Through His Guardian Ad Litem, M.N., and M.N.
Plaintiffs - Appellants

v.

ANTELOPE VALLEY UNION HIGH SCHOOL DISTRICT,
Defendant - Appellee

On Appeal from the United States District Court for the
Central District of California,
Case No. 2:13-cv-01452-DMG-MRW

The Honorable Dolly m. Gee, United States District Judge

# APPELLEE'S ANSWERING BRIEF

Richard D. Oppenheim, Jr., Esq.
David A. Seeley, Esq.
**Sylvester, Oppenheim & Linde**
15910 Ventura Boulevard, Ste.1508
Sherman Oaks, California 91423
Telephone: (818) 461-8500
Facsimile: (818) 461-8190

Attorneys for Defendant-Appellee
Antelope Valley Union High School
District

**TABLE CONTENTS**

1. STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2. STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3. SUMMARY OF APPELLEE DISTRICT'S ARGUMENTS . . . . . . . . . . . . . . . 5

2.a. Appellants Seek a "Third Bite of the Apple" After Losing on Every Issue Before the ALJ and the District Court . . . . . . . . . . . . . . . . . . 5

2.b. A *De Novo* Review is Both Inappropriate and Impossible Given the Case History and the *De Minimus* Record Designated by Appellants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

2.c. There is a Complete Lack of Proof That the Claimed Procedural Violations Met Any of the Three Criteria for a Procedural Denial of a FAPE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

2.d. Alleged Substantive Violations Fail For Lack of Proof . . . . . . . . . . . . . 8

2.e. The Issue of the Adequacy of TVI Services Was Waived Before the ALJ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

2.f. Student Waived His Objection Before the ALJ to the September 17, 2012 Amendment to the August 2, 2012, IEP . . . . . . . ..... . . 9

2.g. The Question of Prevailing Party Status and Attorneys' Fees . . . . . . . 10

4. DETERMINING FAPE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

5. LEVEL OF DEFERENCE ACCORDED TO ALJ . . . . . . . . . . . . . . . . . . . . . 12

6. *DE NOVO* REVIEW IS IMPOSSIBLE DUE TO A WHOLLY INADEQUATE RECORD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

7. APPROPRIATE STANDARD OF REVIEW BY THE DISTRICT COURT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

7.a. Administrative Findings Are Worthy of Deference . . . . . . . . . . . . . . 16

7.b. Degree of Deference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

7.c. The ALJ's Decision Is Thorough and Careful . . . . . . . . . . . . . . . . . . 18

8. OBJECTION TO THE SEPTEMBER 17, 2012 IEP AMENDMENT WAS EXPRESSLY WITHDRAWN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

9. THE ISSUE OF ADEQUACY OF TVI SERVICES WAS WAIVED BEFORE THE ALJ AND NOT PROPER FOR APPELLATE REVIEW . . . . . . 22

9.a. Waiver of the Issue of Adequacy of TVI Services . . . . . . . . . . . . . . . 23

9.b. The Lack of an Answer to the Due Process Complaint Is Not A Procedural Denial of FAPE . . . . . . . . . . . 25

10. FAILURE TO CHECK THE BOX "YES" FOR AT SERVICES WAS NOT A PROCEDURAL DENIAL OF FAPE . . . . . . . . . . . . . . . . . . . . . . . 26

11. APPELLANTS FAILED TO PROVE THAT THE MEASURABLE GOALS IN THE IEP CONSTITUTED A DENIAL OF FAPE . . . . . . . . . . . . . . 30

12. NO PROOF THE IEP'S ORIENTATION & MOBILITY SERVICES AND SOCIAL SKILLS INSTRUCTION ARE INADEQUATE . . . . . . . . . . . . . 32

13. NO PROOF THAT COMPENSATORY EDUCATION IS NEEDED . . . . . 32

14. PREVAILING PARTY STATUS AND ATTORNEYS FEES . . . . . . . . . . . 33

15. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

STATEMENT OF RELATED CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

## TABLE OF AUTHORITIES

**CASES**

*Adams v. State of Oregon* 195 F.3d 1141, 1149 (9th Cir. 1999) . . . . . . . . . . . . . . . 11

*Amanda J. ex. rel. Annette J. v. Clark County Sch. Dist.*, 267 F.3d. at 877 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Anderson v. Bessemer City*, 470 U.S. 564, 575, 105 S. Ct. 1504 (1985) . . . . . . . 12

*Board of Education of the Hendrick Hudson Central School District, et al. v. Rowley* 458 U.S. 176 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8, 10, 17

*CDN, Inc. v. Kapes*, 197 F.3d 1256 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . 21

*Clyde K. v. Puyallup Sch. Dist., No. 3*, 35 F.3d 1396 (9th Cir. 1994), *superseded by statute on other grounds* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Fuhrman v. East Hanover Bd. of Education* 993 F.3d 1031 (3d Cir. 1993) . . . . 12

*Gregory K. v. Longview Sch. Dist.* 811 F.2d 1307 (9th Cir. 1987) . . . . 2, 12, 17, 18

*Hall v. Whitley*, 935 F2d 164 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re O'Brien*, 312 F3d 1135 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*J.L v. Mercer Island Sch. Dist.*, 592 F.3d 938, (9th Cir. 2010) . . . . . . . . . . . . . . . . 27

*J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12, 18, 30, 32

*Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467 (9th Cir. 1993) . . . . . . . . . . . . . . 16

*Park v. Anaheim Union High Sch. Dist.* 464 F.3d 1025 (9th Cir. 2006) . . . . 3, 8, 10

*R.B. v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, (9th Cir. 2007) . . . 12, 17, 18

*Seattle Sch. Dist., No. 1 v. B.S.*, 82 F.3d 1493 (9th Cir. 1996) . . . . . . . . . . . . . . . . 12

*Schaffer v. Weast*, 546 U.S. 49, 126 S. Ct. 528 (2005) . . . . . . . . . . . . . . . . . . . . . . 31

*Singleton v. Wulff*, 428 U.S. 106, 96 S. Ct. 2868 (1976) . . . . . . . .. . . . . . . . . . . . 22

*Town of Burlington v. Dept. of Ed.*, 736 F.2d 773, (1st Cir. 1984), *aff'd*, 471 U.S. 359, 105 S. Ct. 1996, L. Ed. 2d 385 (1985) . . . . . . . . . . . . . . . . . 17

*Union School District v. Smith*, 15 F.3d 1519 (9th Cir.1994) . . . . . . . . . . . . . . . . 16

*W.G. v. Bd. of Trustees of Target Range School District No. 23*, 960 F.2d 1479 (9TH Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7, 25

**FEDERAL STATUTES AND RULES**

20 U.S.C § 1415(f)(1)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

20 U.S.C. § 1415(f)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

20 U.S.C § 1415(i)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

§300.517(a)(1)(i)(ii) and (iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 33

FRAP Rule 10(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Circuit Rule 30-1.4(a)(vii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Circuit Rule 30-1.4(c)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**CALIFORNIA STATUTES**

Cal. Ed.Code § 56043(f)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Cal. Ed.Code § 56505(f)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Cal. Ed.Code § 56507(b)(2)(A)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 33

Evidence Code § 776 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## 1. STATEMENT OF JURISDICTION

Appellee Antelope Valley Union High School District [hereafter, DISTRICT] agrees with Appellants' statement of jurisdiction [OB 2], but would add the following facts. The underlying matter originated as an impartial IDEA due process hearing before a California Administrative Law Judge [20 U.S.C. § 1415(f)(1)(a)] who issued a decision on November 27, 2012, in which DISTRICT was the prevailing party on each and every issue. [ER 101-122] The ALJ's decision became final and appealable on November 27, 2012. [20 U.S.C. § 1415(i)(1)(A). This Court has jurisdiction.

## 2. STATEMENT OF THE CASE

Student M.C. filed a complaint for a due process hearing under the IDEA on August 14, 2012. A due process hearing was conducted on October 9, 2012, October 25, 2012, and November 15, 2012. The ALJ was asked to decide three issues, one with eight sub-issues.[1] The ALJ issued her decision on November 27,

[1] 1. Did District deny Student a free appropriate public education (FAPE) for the 2012-13 school year by failing to offer and provide Student appropriate related services to address all of Student's unique needs, including

a. a qualified teacher for the visually impaired (TVI)
b. an adequately trained one-to-one aide
c. supervision/training by a person/agency qualified to work with the visually impaired
d. appropriate orientation and mobility (O&M) services [note cont'd]
e. training in braille and Nemeth Code
f. access to the expanded core curriculum
g. a structured social skills program, and
h. a transition plan to Student's high school campus?

2. Did District deny Student a FAPE during the 2012-13 school year by failing to include measurable goals in all areas of need in the 8-2-12 IEP?

2012. The ALJ determined that Student M.C. failed to meet his burden on each and every issue tendered for decision. DISTRICT was the prevailing party.

Student and his mother, M.N., timely filed an action in District Court seeking (1) judicial review of administrative action, and (2) prevailing party status and reasonable attorneys' fees. After briefing, the District Court heard argument on June 12, 2014. The District Court issued its Order on July 23, 2014. [ER 1-33]
The Order affirmed the ALJ's decision in all respects and denied M.N.'s claim for prevailing party status attorneys's fees. [ER 1-33]

It is not difficult to understand the outcome of the due process hearing and the District Court proceedings. In resolving the question of whether a school district has offered a FAPE, the focus is on the adequacy of the school district's proposed program. *Gregory K.v. Longview School District*, 811 F.2d 1307, 1314 (9th Cir.1987). Appellants' substantive attacks on M.C.'s August 2, 2012 IEP were, and continue to be on this appeal, entirely misdirected. A challenger to an IEP has the burden of demonstrating the IEP is inadequate by failing to meet the educational needs of the student. Instead, Student devoted all of his efforts to prove how to make the IEP better. That, of course, is not the test. District's FAPE obligation is met when a special needs student receives access to an education that is reasonably calculated to "confer some educational benefit" upon the student. *Board of Education of the Hendrick Hudson Central School District, et al. v. Rowley*, 458

---

3. Did DISTRICT deny a FAPE during the 2012-13 school year by failing to document Student's needs for assistive technology (AT) and by failing to offer Student AT in his August 2, 2012 IEP? [ER 102; reformatted]

U.S. 176, 200, 203-204, 207; *Park v. Anaheim Union High School District,* 464 F.3d 1025, 1031 (9th Cir. 2006).

Student also raised claimed procedural due process violations. Student failed to meet his burden to demonstrate how the several alleged procedural claims resulted in a denial of FAPE. A denial of FAPE may only be shown if procedural violations under the IDEA (1) impeded the child's right to FAPE, (2) significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of FAPE, or (3) caused a deprivation of educational benefits. *W.G. v. Board of Trustees of Target Range School District No. 23,* 960 F.2d 1479, 1484 (9th Cir.1992). The Opening Brief makes the same arguments in this regard which fell short in the two prior proceedings below.

Appellants also devote some effort to arguing a waived issue regarding the adequacy of vison instruction services, as well as complaining about the admission into evidence of an IEP amendment to which Student's attorney expressly withdrew an objection. [OB 12-15]

M.C. has Norrie disease, a congenital defect which causes blindness from infancy, and also has several associated problems, including developmental delays, autistic-like behaviors, asthma, and seizures. [ER 164-165] Per his August 2, 2012 IEP, MC's primary eligibility category is "multiple disabled" with a secondary category of "visual impairment." [ER 123] MC was a student in Palmdale School District [PSD] for the 2011-2012 school year. [ER 102 ¶ 1] The next scheduled Local Education Agency [LEA] was District, which operates the high schools in the

Antelope Valley. M.C. began school at a District high school on August 13, 2014. [ER 106 ¶ 16]

M.C. was assessed by psychologist Robert Patterson, Ph.D. on May 10, 2012, at PSD. [ER 103 ¶3] Dr. Patterson did not observe MC in any high school setting. [ER 104 ¶ 6] He also conducted a variety of psychoeducational tests. He prepared a written report dated June 20, 2012. [ER 103 ¶ 4]

M.C. was assessed by visual impairment specialist Sonja Biggs on June 13-16, 2012, at PSD. [ER 104 ¶ 8] She conducted a functional vision assessment, and administered various other tests at PSD. [ER 104 ¶ 8]

California Education Code §56043(f)(2) requires that a school district conduct an initial IEP for an incoming student within 30 days of enrollment. District's first day of school for the 2012-2013 year was August 13, 2012. [ER 106 ¶ 16] To prepare for M.C.'s upcoming matriculation, however, District arranged a transition IEP team meeting early, for August 2, 2012. [ER 106 ¶ 16] The IEP meeting is described in the IEP, [ER 157-158] and in the ALJ's decision. [ER 106-109; ¶¶ 16-26] M.N., M.C.'s mother, was in attendance. She signed the IEP to authorize "goals and services," but did not agree that the IEP constituted a FAPE. [ER 159]

M.C. filed his request for a due process hearing on August 14, 2012 [ER 67, 101], the day after school started. [ER 101] The due process hearing was conducted before ALJ Adrienne L. Krikorian on October 9, October 24, and October 25, 2012. [ER 101] The ALJ's Decision was issued November 27, 2012. [ER 101-122]

**3. SUMMARY OF APPELLEE DISTRICT'S ARGUMENTS**

**<u>3.a. Appellants Seek a "Third Bite of the Apple" After Losing on Every Issue Before the ALJ and the District Court.</u>**

This case originated as an IDEA due process hearing with an ALJ issuing a decision on November 27, 2012. [ER 101-122] Three issues were raised (one of which had eight sub-issues). [ER 102 ¶¶ 1-3] Appellants lost on every issue. [ER 114 ¶ 14 - 121 ¶ 35] The ALJ's Order at the end of her Decision reads, "All of Student's claims for relief are denied." [ER 121] The Decision also holds, "District prevailed as to all issues that were heard and decided in this case." [ER 121]

An action for judicial review before the District Court resulted in a July 23, 2014, Order affirming the ALJ's Decision in all respects. [ER 1-33] Both the ALJ and the District Court found, repeatedly and on every issue, that Appellants did not meet their burden of proof of demonstrating that the August 2, 2012, IEP denied M.C. a FAPE. Now Appellants, in Sisyphean fashion, come before this Court hoping for a "third bite of the apple" with a request for a complete *de novo* review. [OB 10-11]

**<u>3.b. A *De Novo* Review is Both Inappropriate and Impossible Given the Case History and the Minimal Record Designated by Appellants.</u>**

The reason Appellants request *de novo* is that Appellants believe neither the findings nor the conclusions made by the ALJ are worthy of the deference the District Court accorded to her Decision, for various reasons [OB 11]

A *de novo* review would require the entire administrative record – the same one generated during the due process hearing and reviewed by the District Court.

[ER 2:6-10] There is no indication that Appellants designated the entire record, and the sparse Excerpts that were filed omits the testimony of six of the eleven witnesses who testified before the ALJ. It contains only snippets of testimony of the other five witnesses, but no cross-examination except two examined under Evidence Code § 776. District requests that the District Court's Order be affirmed in its entirety or this appeal summarily dismissed for the lack of a sufficient record.

**3.c. There is a Complete Lack of Proof That the Claimed Procedural Violations Met Any of the Three Criteria for a Procedural Denial of a FAPE.**

The OB raises several claimed procedural due process violations but fails to establish that any of them constitutes a denial of a FAPE. A denial of FAPE may only be shown if procedural violations under the IDEA (1) impeded the child's right to FAPE, (2) significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of FAPE, or (3) caused a deprivation of educational benefits. *W.G. v. Board of Trustees of Target Range School District No. 23*, 960 F.2d 1479, 1484 (9th Cir.1992). Two such procedural issues were fully litigated before the ALJ: and the District involving a software glitch resulting in incorrect information concerning assistive technology devices (AT) and visual instruction services. [OB 10-14]. These errors were vigorously attacked in both the due process hearing and before the District Court. Lacking, however, is any evidence that these errors met any of the three criteria cited above for a procedural denial of a FAPE. "In sum, Plaintiffs have not borne their burden to demonstrate by a preponderance of the evidence that any procedural violation

resulted inj a denial of FAPE." [ER 14:18-20].

**3.d. Alleged Substantive Violations Fail For Lack of Proof.**

The standout theme that runs through the ALJ's decision and the District Court's Order is that Student failed to produce evidence that the August 2, 2012 IEP was inadequate to meet his educational needs. When challenging an IEP, the challenger must produce evidence that the IEP denies a student a FAPE. A party necessarily must fail in this task if the only evidence presented is how the party believes an IEP can be improved. *J.W. ex rel. J.E.W. v. Fresno Unified School District*, 626 F.3d 431, 439 (9th Cir.2010).

Student has continually, and unsuccessfully, tried to show how the IEP could be made better. The test is not whether the IEP is the best program for the Student, but whether the IEP meets the Student's educational needs. School districts are not required to provide a program that maximizes the potential of the student; rather the FAPE obligation is met when a special needs student receives access to an education that is reasonably calculated to "confer some educational benefit" upon the student. *Board of Education of the Hendrick Hudson Central School District, et al. v. Rowley*, 458 U.S. 176, 200, 203-204, 207; *Park v. Anaheim Union High School District*, 464 F.3d 1025, 1031 (9th Cir. 2006). The OB is the Appellants' third effort to flog the wrong horse.

**3.e. The Issue of the Adequacy of TVI Services Was Waived Before the ALJ.**

The OB also raises the issue of the adequacy of TVI (teacher of the visually impaired) services. This is an issue that was waived at the due process hearing, and the ALJ and the District Court summarily rejected the issue for decision. Due to waiver, it is not appropriate for appellate review.

**3.f. Student Waived His Objection Before the ALJ to the September 17, 2012 Amendment to the August 2, 2012, IEP (Exhibit 16).**

Appellants still complain of the ALJ allowing into evidence the September 17, 2012 IEP amendment correcting the erroneous entry on the August 2, 2012 IEP on the matter of quantity of TVI services – the so-called "Exhibit 16." Student's counsel objected to its admission on the first day of hearing (October 9, 2012) solely on the basis of District's failure to exchange it as an exhibit five business days before the hearing – the "five day rule." The hearing was continued to October 24, 2012, and Student's counsel agreed that the additional time had cured any prejudice. On October 24, 2012, Student's counsel informed the ALJ that after a "meet and confer" with District's counsel, an agreement had been reached to allow Exhibit 16 to be admitted. The District Court soundly rejected Student's complaint regarding "Exhibit 16" and found that any objection to the exhibit had been "explicitly waived." [ER 11:3-22] The express withdrawal of the objection should be the end of it.

### <u>3.g.  The Question of Prevailing Party Status and Attorneys' Fees</u>

At no time has M.C. or M.N. prevailed on any issue presented for decision before the ALJ or the District Court. The OB makes essentially the same arguments before this Court. Therefore, Appellants fail to persuade they are entitled to prevailing party status and attorneys' fees.

District requests leave to file a motion for attorneys' fees and costs pursuant to CFR §300.517(a)(1)(i)(ii) and (iii), and Cal. Ed. Code § 56507(b)(2)(A)(B). District was the prevailing party <u>on every issue</u> in the proceedings below, and should be the prevailing party on all issues in this appeal. At some point, it should have been clear to Student's counsel that continuing to pursue this matter was frivolous. In light of some of the specious arguments advanced by Appellants in this appeal, the only conclusion is that this appeal is frivolous, as were the underlying two proceedings in the eyes of any reasonable litigator and trial lawyer.

## 4.  DETERMINING FAPE

"The 'basic floor of opportunity' provided by the [IDEA] consists of access to specialized instruction and related services which are individually designed to provide educational benefit to" a child with special needs. *Board of Education of the Hendrick Hudson Central School District, et al. v. Rowley,* 458 U.S. 176, 201, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). School districts are not required to provide a program that maximizes the potential of the student (458 U.S. at 200), rather the FAPE obligation is met when a special needs student receives access to an education that is reasonably calculated to "confer some educational benefit" upon the student.

*Id.* at 200, 203-204, 207; *Park v. Anaheim Union High Sch. Dist.* 464 F.3d 1025, 1031 (9th Cir. 2006).

To determine the question of whether FAPE has been offered requires examination the adequacy of the proposed program. *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1314 (9th Cir. 1987). A school district is not required to place a student in a program preferred by the parent, even if that program results in greater educational benefit to the student. (*Ibid.*) For a school district's offer of special education services to a disabled pupil to constitute FAPE, the offer of educational services and placement must be designed to meet the student's unique needs, comport with the student's IEP, and be reasonably calculated to provide the pupil with some educational benefit in the least restrictive environment. (*Ibid.*)

The trier of fact must be mindful of the "snapshot rule." Whether a student was provided or denied FAPE is determined by looking at <u>what was reasonable at the time</u>, not in hindsight. *Adams v. State of Oregon*, 195 F.3d 1141, 1149 (9th Cir. 1999), citing *Fuhrman v. East Hanover Bd. of Education*, 993 F.3d 1031, 1041 (3d Cir. 1993).

**5. LEVEL OF DEFERENCE ACCORDED TO ALJ**

How much deference the court should give to the administrative agency "is a matter of discretion of the courts." *Gregory K.*, 811 F.2d at 1311. District courts should give more deference to a state administrative agency where the ALJ's decision is "thorough and careful," *R.B. v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 942 (9th Cir.2007), and when it evinces "careful, impartial consideration of all

the evidence and demonstrates his [or her] sensitivity to the complexity of the issues presented." *J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 438-39 (9th Cir.2010). An administrative decision is "thorough and careful" when "the officer participates in the questioning of witnesses and writes a decision 'contain[ing] a complete factual background as well as a discrete analysis supporting the ultimate conclusions.'" *R.B.*, 496 F.3d at 492. Moreover, "[t]o the extent the district court's findings are based on determinations regarding the credibility of the witnesses, 'Rule 52(a) demands even greater deference to the trial court's findings.'" *Seattle Sch. Dist., No. 1 v. B.S.*, 82 F.3d 1493, 1499 (9th Cir. 1996), quoting *Anderson v. Bessemer City*, 470 U.S. 564, 575, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985).

### 6. *DE NOVO* REVIEW IS IMPOSSIBLE DUE TO A WHOLLY INADEQUATE RECORD.

The action filed in the District Court was one for judicial review of administrative action and for attorneys' fees [ER 1:25 - 2:2]. The District Court's Order [ER 1-33] was the product of a careful and thorough review of the entire administrative record – transcripts of witness testimony and documentary evidence [ER 2:6-10]. Appellants lost on each and every issue tendered to both the ALJ <u>and</u> the District Court [ER 121; 33:12-13]. Appellants now ask this Court to conduct a *de novo* factual review of the District Court's Order without the benefit of the entire administrative record [OB 10-11]. Instead, Appellants have presented this Court with a cursory ER that appears to have been cherry-picked with a microscope,

making it impossible to evaluate the District Court's findings of fact, conclusions of law and credibility assessments. Indeed, the ER is so poorly assembled it lacks any identification of the witness testimony, any context and, frankly, any coherence.

FRAP Rule 10(b)(2) requires that the record on appeal include all evidence necessary to decide an issue as follows:

> If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all evidence relevant to that finding or conclusion. [Emphasis added]

Circuit Rules 30-1.4(a)(vii) and 30-1.4(c)(iii) similarly provide as follows:

> In all appeals, the excerpts of record shall include:
>
> (a)(vii) except as provided in Circuit Rule 30-1.4(b)(ii), where an issue on appeal is based upon a challenge to the admission or exclusion of evidence, that specific portion of the reporter's transcript recording any discussion by court or counsel involving the evidence, offer of proof, ruling or order, and objections at issue;
>
> (c)(iii) where the appeal is from a district court order reviewing an agency's benefits determination, the entire reporter's transcript of proceedings before the administrative law judge if such transcript was filed with the district court.[2] [Emphasis added]

Here, this was not done. The ER filed by Appellants is hopelessly inadequate and it

---

[2] The entire administrative record was lodged with the District Court:

"This matter came on for oral argument on the administrative record on June 12, 2014. [*See* Doc. #33.] Following oral argument, the matter was taken under submission. Having carefully reviewed the extensive administrative record and the arguments of counsel, as presented at the hearing and in the written submissions, the Court now renders its decision.

For the reasons set forth below, the Court affirms the decision of the ALJ."

[District Court Order ER 2:6-11]

is obvious that noncompliance with FRAP Rule 10(b)(2), Circuit Rule 30-1.4(a)(vii) and Circuit Rule 30-1.4(c)(ii) can only be viewed as willful.

The OB presents six issues for appellate review [OB 2-3], all of which pertain to alleged denials of FAPE in one form or another. Appellants claim that both the ALJ and the District Court did not conduct a thorough analysis of the evidence, and therefore, their findings and conclusions should not be accorded any deference. [OB 11]. It is not possible to analyze these contentions without the record created before the ALJ and reviewed *in toto* by the District Court.

The ER contains highly selective testimony from MN (MC's mother), Robert Patterson, Ph.D. (psychologist), Martha Soza Gonzalez (MC's special education teacher), Paul Lund (MC's Orientation & Mobility teacher), Sonja Biggs (Orientation & Mobility specialist), and Christin Knitter (teacher of the visually impaired). No cross-examination is included. Entirely omitted is the testimony of Daniel Sanchez (MC's assigned paraeducator), Kathleen Astourian (program specialist), Johan Mekel (special education director), Kathryn Rachelle Taylor (District employee), Charae Anderson (program specialist), and Julie Elliott (special education director for Palmdale School District). All of these witnesses, and their testimony, are mentioned in the ALJ's Decision [ER 101-122] and the District Court's Order [ER 1-33]. In short, the record before this Court contains only snippets of testimony of five out of the eleven witnesses who appeared before the ALJ.

An utterly inadequate record leaves this Court with little choice but to either

dismiss the appeal or affirm the District Court's Order. Dismissal is appropriate if appellant fails to provide this Court with an adequate record on appeal. "Litigants should be aware that failure to provide transcripts or other required materials may well result in dismissal of the appeal or other sanctions." *Hall v. Whitley*, 935 F.2d 164, 165 (9th Cir. 1991) (de novo review required reading state court transcripts in habeas case, which appellant failed to provide). The failure to provide a sufficient record on appeal may lead to affirmance of the District Court decision without considering the question of dismissal of the appeal. *In re O'Brien*, 312 F.3d 1135, 1137 (9th Cir. 2002).

## 7. APPROPRIATE STANDARD OF REVIEW BY THE DISTRICT COURT

### 7.a. Administrative Findings Are Worthy of Deference.

"[J]udicial review in IDEA cases differs substantially from judicial review of other agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review." *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1471 (9th Cir. 1993) (internal citations omitted). While this Court has construed review in IDEA cases to be *de novo*, (see *Union School District v. Smith*, 15 F.3d 1519, 1524 (9th Cir. 1994)), it has found that "[c]omplete *de novo* review . . . is inappropriate." *Amanda J. ex. rel. Annette J. v. Clark County Sch. Dist.*, 267 F.3d at 877 (9th Cir. 2001).

Rather, this Court has stressed that "Congress intended states to have the primary responsibility of formulating each individual child's education" and therefore courts "must defer to their 'specialized knowledge and experience' by

giving 'due weight' to the decisions of the states' administrative bodies" *Id.*, citing *Hendrick Hudson Cent. Sch. Dist. Bd. Of Educ. v. Rowley*, 458 U.S. 176, 206 (1982). Courts are not free "to substitute their own notions of sound educational policy for those of school authorities which they review." *Rowley*, 458 U.S. at 206. Rather, "[t]he court, in recognition of the expertise of the administrative agency, must consider the findings carefully and endeavor to respond to the hearing officer's resolution of each material issue." *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311, (9th Cir.1987), citing *Town of Burlington v. Dept. of Ed.*, 736 F.2d 773, 792 (1st Cir. 1984), *aff'd*, 471 U.S. 359, 105 S. Ct. 1996, L. Ed. 2d 385 (1985).

The party challenging the administrative decision in district court bears the burden of persuasion on each claim challenged. *Clyde K. v. Puyallup Sch. Dist. No. 3*, 35 F.3d 1396, 1399 (9th Cir. 1994), *superseded by statute on other grounds.* A reviewing court "receives the administrative record, hears any additional evidence, and bas[es] its decision on the preponderance of the evidence." *R.B. v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 937 (9th Cir. 2007) (quoting 20 U.S.C. § 1415(i)(2)(B)).

**7.b. Degree of Deference**

How much deference the court should give to the administrative agency "is a matter of discretion of the courts." *Gregory K.*, 811 F.2d at 1311. District courts should give more deference to a state administrative agency where the ALJ's decision is "thorough and careful," *R.B.*, 496 F.3d at 942, and when it evinces "careful, impartial consideration of all the evidence and demonstrates his [or her]

sensitivity to the complexity of the issues presented. *J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 438-39 (9th Cir.2010). As the District Court noted at ER 8:14-22:

> An administrative decision is "thorough and careful" when "the officer participates in the questioning of witnesses and writes a decision 'contain[ing] a complete factual background as well as a discrete analysis supporting the ultimate conclusions.'" *R.B.*, 496 F.3d at 492, citing *Park v. Anaheim Union High Sch. Dist.*, 464 F.3d 1025, 1031 (9th Cir. 2006). Moreover, "[t]o the extent the district court's findings are based on determinations regarding the credibility of the witnesses, 'Rule 52(a) demands even greater deference to the trial court's findings.'" *Seattle Sch. Dist., No. 1 v. B.S.*, 82 F.3d 1493, 1499 (9th Cir. 1996), quoting *Anderson v. Bessemer City*, 470 U.S. 564, 575, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985).

**7.c. The ALJ's Decision Is Thorough and Careful.**

The ALJ's Decision [ER 101-122] describes, in great detail, MC's background and disabilities, the conduct of the 8-2-12 IEP, the background and qualifications of each witness that testified at the hearing, the assessments that were done, exhibits that were offered, the District's curriculum, the IEP, and then addressed each issue tendered for decision. Witness credibility was addressed. (For example, ER 114 ¶ 14, credibility of Knitter, Biggs, Sanchez and Gonzalez; ER 114 ¶ 15 -115 ¶16, credibility of Sanchez and Mekel; ER 115 ¶ 17, credibility of Biggs and Lund; ER 116 ¶ 19, credibility of Knitter, Biggs, Lund, Sanchez and Gonzalez). The District Court specifically found that the ALJ's Decision was to be accorded "particular deference" as follows:

> Here, the ALJ thoughtfully questioned witnesses during a three-day hearing, clarifying witness responses and eliciting follow-up responses. The ALJ wrote a 21 page opinion that reviewed the qualifications of witnesses and

> culled relevant details from the extensive factual record. The ALJ's opinion thoroughly reviews the legal standards governing claims under the IDEA, analyzes the issues presented, and supports conclusions with references to the record. Accordingly, the Court "shall give due weight to the ALJ's decision and shall give particular deference to the ALJ's decision to the extent that it was thorough and careful." *J.W. 626 F.3d* at 440-41 (internal quotation omitted). [ER 8:23-9:3]

The Decision chronicles MC's December 6, 2011, IEP at PSD, identifying the two District employees who attended, as well as the final settlement agreement between MC and PSD. [ER 103 ¶ 2].

The August 2, 2012, transition IEP conducted by District is addressed at length. [ER 106-108]. The team members are identified [ER 107 ¶ 17]. The discussion of issues during the team meeting are described. The present levels of performance (PLOPS) were addressed by the team [ER 107 ¶ 19]. Goals were discussed [ER 107 ¶ 20]. All of this was documented by the ALJ. [*Id.*]. For example, the team discussed MC's ambulation and safety needs and agreed that Eastside High School would be the most appropriate and least restrictive placement. [ER 107 ¶ 18]. The team adopted Ms. Biggs' recommendation that MC be provided with a longer cane. [ER 107 ¶ 19]. The training requirements for those assigned to work with MC was discussed. [ER 107 ¶ 19]. The decision also addressed, in detail, the education, training and experience of key IEP team members who testified at the hearing [ER 103 ¶ 3, Dr. Robert Patterson; ER 104 ¶ 7, Sonja Biggs; ER 106 ¶ 12, Paul Lund; ER 106 ¶ 13, Christin Knitter; ER 106 ¶ 14, Johan Mekel; ER 109 ¶ 27, Daniel Sanchez; ER 110 ¶ 30, Martha Gonzalez].

M.C. was new to District staff which prompted the team to agree to conduct a later IEP on a 30-60-90 day interval. The Decision correctly notes that both Dr. Patterson and Ms. Biggs concurred with this plan so the team could develop appropriate goals and objectives. [ER 107-108 ¶ 20]. The decision described the IEP contents and the District's offer of FAPE in detail. [ER 108 ¶ 22].

## 8. OBJECTION TO THE SEPTEMBER 17, 2012 IEP AMENDMENT WAS EXPRESSLY WITHDRAWN.

As this Court has noted: " The withdrawal of an objection is tantamount to a waiver of an issue for appeal." *CDN, Inc. v. Kapes*, 197 F.3d 1256, 1258-1259 (9th Cir. 1999).

M.C. objected to Ex. 16 at the first day of hearing [October 9, 2012] on the grounds that it had not been exchanged five days before the hearing [ER 11:3-22]. The ALJ proposed a continuance of the hearing to October 24, 2012, for, *inter alia,* an opportunity to cure any prejudice for the tardy disclosure of the exhibit. MC agreed that the continuance would cure the prejudice. At the October 24, 2012 hearing, counsel for M.C. informed the ALJ that the attorneys had met and conferred in the interim and had agreed that Ex. 16 could be admitted without objection [ER 11:3-22].

The District Court made a detailed finding that plaintiffs had affirmatively and expressly waived any objections to the admission of Ex. 16:

> With regard to Plaintiffs' argument about the District's failure to timely disclose evidence, the Court's review of the record demonstrates that

Plaintiffs explicitly waived this argument at the administrative hearing. On October 9, 2012, the District sought to introduce evidence that had not previously been disclosed to Plaintiffs at least five business days prior to the hearing, as required under 20 U.S.C. § 1415(f)(2)(B) ("the five-day rule"). (*See* OAH Transcript, October 9, 2012, at 34:25; 35:1-25; 36:1-2.) Plaintiffs objected to the admission of the evidence solely on the ground that the District failed to comply with the five-day rule. (*Id.*, October 9, 2012, at 40:19-25; 41:1-8.) The ALJ subsequently asked Plaintiffs if any prejudice would be relieved if the documents were admitted approximately two weeks later on the second day of the hearing. (*Id.*, October 9, 2012, at 43:11-18; 44:17-25; 45:4.) Plaintiffs responded that any prejudice they suffered due to the District's failure to comply with the five-day rule would be cured by their opportunity to review the documents before October 24, 2012. (*Id.*, October 9, 2012, at 45:2, 5.) On October 24, 2012, Plaintiffs again represented that any prejudice arising from the District's failure to comply with the five-day rule was cured. (*Id.*, October 24, 2012, at 6:1-25; 7:1-5.) Plaintiffs did not otherwise object to the admission of the evidence at the due process hearing. Accordingly, Plaintiffs waived any objection to the admission of the evidence. [ER11:3-22]

## 9. THE ISSUE OF ADEQUACY OF TVI SERVICES WAS WAIVED BEFORE THE ALJ AND NOT PROPER FOR APPELLATE REVIEW.

A federal appeals court will not consider an issue that was not raised in the proceedings below. *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S. Ct. 2868, 2877 (1976).

The 9-17-12 IEP amendment corrected the amount of TVI (teacher of visually impaired) to be delivered to M.C. from 240 minutes per month to 300 minutes per week.[3] The IEP amendment was first produced on the first day of the hearing on

---

[3] The ALJ found that the IEP form used for the August 2, 2012 team meeting was computer generated with a SEIS program. (Special Education Information System). Due to program glitches, some entries team members made on the forms were incorrect. Errors included the incorrect amount of TVI services, as well as causing a box to be checked "no" instead of "yes" for the need for assistive

October 9, 2012. [ER 11:3-22]. Appellants claim that this amounted to a procedural due process violation by depriving M.N., mother of M.C., to adequately participate in the August 2, 2012 IEP team meeting. They also complain that the District's failure to file an answer to the due process complaint was a procedural due process violation by depriving the mother and student of what the District's position was on the issues. [OB 12-15].

**9.a. Waiver of the Issue of Adequacy of TVI Services**

The issues to be decided by the ALJ were discussed on the first day of the due process hearing on October 9, 2012. [ER 19:26-27]. The adequacy of the TVI services was not one of the issues before the ALJ. The issue was first raised in the Student's closing brief. The ALJ refused to consider arguments first made in the closing brief. [ER 19:3-15; 102: fn. 2]. Whether the due process complaint raised the issue of the adequacy of TVI minutes is of no importance since the issue was waived during an issues conference with counsel and the ALJ on the first day of the hearing on October 9, 2012. The District Court found:

> The Complaint was superseded, however, by the ALJ's restatement of the issues at the start of the administrative hearing. (OAH Transcript, October 9, 2012 at 27:22-25; 28:1-25; 29:1-25; 30:1-25; 31:1-25; 32:1-25; 33:1-25; 34:1-18.) At the hearing, the ALJ restated the issue with respect to TVI services as follows: "Whether the District denied Student a FAPE for the 2012/13 school year by failing to provide appropriate related services to address all of Student's needs including . . . a qualified teacher for the visually impaired . . . [and] supervision and training by a person agency-qualified to work with visually impaired." (*Id.*, October 9, 2012 at 27:25; 28:1-2.) The ALJ asked Plaintiffs' counsel if the statement of issues was correct, and Plaintiffs' counsel

---

technology (AT). [ER 108:¶ 23].

> responded as follows: "Correct, Your Honor. And I just want to clarify, though, that the way the complaint was originally worded, especially in the area of the TVI, teacher of visually impaired, and the one-to-one aide is that it was adequately trained . . . These people were not adequately trained." (*Id.*, October 9, 2012 at 28:13-17, 19-20.) [ER 17:21-18:5].
>
> The District Court noted that appellants waived the issue in their closing brief in a section entitled "ISSUES TO BE DECIDED." That section listed the issues without any reference to the adequacy of TVI minutes to be provided. [ER 85-86]. The District Court noted: "In other words, Plaintiffs adopted the statement of issues made by the ALJ at the beginning of the hearing on October 9, 2012. (*See* OAH Transcript, October 9, 2012, at 27:22-25; 28:1-25; 29:1-25; 30:1-25; 31:1-11.)" [ER 19:24-27].

The issue of the adequacy of visual instruction services continues to re-surface even though it was expressly waived by Student's counsel on the first day of the hearing on October 9, 2012. Student first raised the issue in his Closing Brief [ER 89-90] filed with the ALJ who refused to consider issues first raised after the hearing. [ER 102 fn.2]. Student raised the waived issue again before the District Court. [ER 56:1-58:17]. Once again, Student was informed by the District Court the issue was waived and would not be considered. [*supra*, ER 17:21-18:5; 19:24-27]. Now Student brings up this long-since waived issue before this Court hoping for a different outcome. [OB 26-32].

**<u>9.b. The Lack of an Answer to the Due Process Complaint Is Not A Procedural Denial of FAPE.</u>**

A denial of FAPE may only be shown if procedural violations under the IDEA (1) impeded the child's right to FAPE, (2) significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of

FAPE, or (3) caused a deprivation of educational benefits. [Ed. Code § 56505 (f)(2)[4]; *W.G. v. Bd. of Trustees of Target Range School District No. 23*, 960 F.2d 1479, 1484 (9th Cir.1992).].

Appellants assert that the District's failure to file and serve an answer to the due process complaint amounted to a procedural due process violation. [OB 13]. The District Court noted that plaintiffs could not cite any authority to this effect, nor was the District Court able to locate any such authority. [ER 10:12-22]. The District Court also found that plaintiffs had failed to demonstrate the failure to file an answer resulted in (1) the loss of educational opportunity, (2) seriously infringed on M.N.'s opportunity to participate in the IEP formulation process, or (3) caused a deprivation of educational benefits. [ER 10:21-24]. Indeed, it would be difficult to imagine how failing to file an answer could cause any of these three procedural grounds for a denial of FAPE.

### 10. FAILURE TO CHECK THE BOX "YES" FOR AT SERVICES WAS NOT A PROCEDURAL DENIAL OF FAPE.

The AT box on the IEP form did not indicate MC required AT services [ER 126]. As noted *supra*, the form showed "no" rather than "yes" for a need to provide

---

[4] In matters alleging a procedural violation, a due process hearing officer may find that a child did not receive a free appropriate public education only if the procedural violation did any of the following:

(A) Impeded the right of the child to a free appropriate public education.

(B) Significantly impeded the opportunity of the parents to participate in the decision making process regarding the provision of a free appropriate public education to the child of the parents.

AT devices due to a glitch in the SEIS system. Yet the IEP went on to describe various AT equipment and their use in formulating goals in other parts of the IEP. [Brailler, ER 130, 134, 135, talking calculator ER 134, 135, computer, ER 241].

Appellants contend this box-checking error on the August 2, 2012 IEP resulted in a procedural due process violation resulting in a denial of FAPE for two distinctly unsupportable reasons. First, Appellants claim that without adequate written documentation in the IEP, the student's mother had no means to "enforce" the provisions of the IEP. [OB 22]. Second, inadequate documentation deprived the student's mother of meaningful participation in the IEP team meeting and IEP formulation. [OB 21].

The District Court made quick work out of the first contention by noting that an inability to "enforce" an IEP is not the legal test in determining whether a procedural violation has resulted in a denial of FAPE. [ER 13:12-14:4]. Rather, the Court noted "[a]" procedural violation denies a free appropriate public education if it results in the loss of an educational opportunity, seriously infringes the parents' opportunity to participate in the IEP formulation process or causes a deprivation of educational benefits." *J.L v. Mercer Island Sch. Dist.,* 592 F.3d 938, 953 (9th Cir. 2010). [ER 9:17-22].

As for the second argument, the District Court concluded that plaintiffs failed to meet their burden to demonstrate by a preponderance of the evidence that any procedural violation resulted in a denial of FAPE as follows:

> Here, the ALJ concluded that the evidence in the record established that M.N. meaningfully participated in the August 2, 2012 IEP. (ALJ Legal

> Conclusions ¶ 32.) [ER 120] The ALJ did not specifically consider whether the IEP team discussed the types of AT equipment serves to be provided to M.C. Based on its own review of the record, however, the Court determines that a preponderance of the evidence supports a finding that the IEP team – of which M.N. was a part – considered at least some of the AT services and equipment to be provided to M.C. Specifically, M.C.'s teacher for the visually impaired ("TVI") testified that the IEP team discussed a laptop and optical character recognition software or hardware to be provided to M.C. at the August 2, 2012 IEP meeting. (OAH transcript, October 25, 2012, at 256:1-24; 258:4-25; 259:1-7.) Indeed, it is not clear based on the Court's review of the record, whether Plaintiffs contend that AT services that the District intended to provide were *not* discussed at the IEP meeting or whether M.N. was *unable* to participate in the formulation of the IEP with respect to AT services. In sum, Plaintiffs have not borne their burden to demonstrate by a preponderance of the evidence that any procedural violation resulted in a denial of FAPE. [ER 14:5-20].

The ALJ's findings and conclusions on this point were thorough and well-reasoned.

> 31. Regarding the time period between August 2, 2012 and August 24, 2012, Student did not offer any credible evidence that, prior to the August 24, 2012 IEP amendment, the clerical error in the IEP relating to AT denied Mother the opportunity to meaningfully participate in the decision-making process regarding Student's educational program, substantively denied him a FAPE or deprived him of access to his education.
>
> 32. The evidence established that Mother meaningfully participated in the August 2, 2012 IEP with the assistance of her legal counsel, Dr. Patterson and Ms. Biggs. The IEP team considered Mother's questions and concerns and recommendations made by Dr. Patterson and Ms. Biggs, both of whom actively participated in the lengthy IEP meeting. The evidence also established through the credible testimony of Ms. Knitter, Mr. Lund and Mother that the IEP team agreed that Student would receive AT devices as part of his IEP. Ms. Knitter and Mr. Lund had an actual understanding during the August 2, 2012 IEP meeting, in light of Ms. Biggs' and Dr. Patterson's recommendations and their own experience working with Student, of what AT devices Student needed to access his education at Eastside during his transition to high school. Ms. Knitter met with the AT service provider at Eastside on the first day of school to insure the devices were ordered if not immediately available.

> 33. The evidence also established that District timely implemented the IEP, as amended on August 24, 2012. Notwithstanding the clerical error discussed above, beginning with the first week of school until the time of hearing, District provided Student with a variety of AT devices, many of which Ms. Biggs recommended, including a longer cane, a classroom desktop computer with braille overlays for the keyboard, a laptop computer with NVDA and Duxbury software for home use, a USB memory stick for transport of work from home to school, a Bookport, a braille writer, an Eye Pal Solo reader, a Nemeth decoder for work with numbers and mathematics, and a talking calculator. District's failure to check the box "yes" in the original IEP, and specify which devices would be provided to Student in the August 24, 2012 IEP amendment, was not significant under all of the above circumstances, and did not substantively deny Student a FAPE. (Factual Findings 1 through 31; Legal Conclusions 1, 3 through 22, 24 through 26, 28 through 33.)
>
> 34. Student also contends that District denied him a FAPE by not offering all of the AT devices recommended by Ms. Biggs. Although Ms. Biggs recommended an abacus, a talking watch and a tactile map of the campus, Mr. Lund and Ms. Knitter disagreed that those devices were essential for Student to access his education. Ms. Biggs' recommendations were based on her assessments of Student while he was in middle school in another District, and she was unfamiliar with Eastside, all of which reduced her persuasive impact of her recommendations. On the other hand, Ms. Knitter and Mr. Lund credibly testified that they had worked regularly with Student during the past school year, that Student had made progress and met some of his goals during their prior instruction, and they needed to work with Student in his high school environment to determine whether he had additional specific needs. Student did not offer any evidence that by not having an abacus, a talking watch or a tactile map of the campus he could not meaningfully access his education at Eastside. Ms. Knitter's and Mr. Lund's testimony, when weighed against that of Ms. Biggs, was more persuasive on the issue. [ER 119-120].

## 11. APPELLANTS FAILED TO PROVE THAT THE MEASURABLE GOALS IN THE IEP CONSTITUTED A DENIAL OF FAPE.

The key issue, brought into sharp focus by the District Court, is that "[t]he IDEA does not require that a school district provide the 'absolute best of potential-maximizing education for the individual child.' *J.W. ex rel. J.E.W. v. Fresno Unified*

*Sch. Dist.*, 626 F.3d 431, 439 (9th Cir.2010). Rather, the relevant question is whether the IEP actually offered by the District was *adequate* – that is, whether the [IEP's] goals and goal achieving methods 'were reasonably calculated to confer [M.C.] with a meaningful benefit' at the time the plan was developed." *Id*. [ER 24:19-24].

The following 20 measurable goals are found in M.C.'s August 2, 2012 IEP: braille reading goals [ER 131], braille writing goals [ER 133], learning to spell and pronounce words and spell them with a brailler [ER 136], analyze, evaluate and answer questions about a story read in braille [ER 137], negotiate fastenings on clothing [ER 138], answer questions with socially appropriate, on topic responses and continue conversation [ER 139], travel five new routes around cafeteria [ER 140], stopping when he steps on a change in surface after using cane to touch the changed surface [ER 141], write the letters of the alphabet using raised line paper [ER 142], give an accurate verbal response describing his daily activities [ER 143], play board games and interact with peers [ER 144], initiate social interactions, greetings, invite others to join activities [ER 145], kick a rolled ball or beep ball 20 feet [ER 146], walk sideways 6 feet on a 4 inch balance beam [ER 147], throw a ball to a target 10 feet away with a mature overhand throw [ER 148], and run 25 yards with a sighted guide [ER 149].

Appellants devoted their efforts before the ALJ and the District Court attempting to demonstrate that the IEP should contain the recommendations of their two experts, Dr. Patterson and Sonjia Biggs. Those efforts were misplaced. The party challenging an IEP bears the burden of proof on all issues. *Schaffer v. Weast,*

546 U.S. 49, 56-62, 126 S. Ct. 528 (2005). The obvious effect of *Schaffer* is that the IEP is presumed to provide a FAPE unless proven otherwise by a preponderance of the evidence. It is not a question whether other measurable goals should have been included in the IEP. Rather, the question is whether, as is, does the IEP deny the student a FAPE.

As noted, *supra*, Appellants' failure to meet the burden of demonstrating a denial of FAPE has been a predominant theme throughout this case. That is why Appellants lost on every issue before the ALJ and the District Court. There is no evidence in the record that either Dr. Patterson or Sonja Biggs was ever asked for their expert opinion on the ultimate issue in this case: "Does this IEP provide M.C. a FAPE?" That question is the entire focal point of an IDEA due process hearing and the question was never asked.

## 12. NO PROOF THE IEP'S ORIENTATION & MOBILITY SERVICES AND SOCIAL SKILLS INSTRUCTION ARE INADEQUATE.

Throughout the due process hearing, and in its case presented to the District Court, Student continually argued that the IEP team should simply have followed the recommendations of Dr. Patterson and Sonja Biggs when preparing the August 2, 2012 IEP. Appellants carry on with the same arguments in this appeal. It is a flawed approach for the same reasons noted above. When challenging an IEP, the challenger must produce evidence that the IEP denies a student a FAPE. A party necessarily must fail in this task if the only evidence presented is how the party believes an IEP can be improved. *J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.,* 626 F.3d 431, 439

(9th Cir.2010).

### 13. NO PROOF THAT COMPENSATORY EDUCATION IS NEEDED

The District Court succinctly dealt with the request for compensatory education. "As Plaintiffs have not demonstrated that they are entitled to relief with respect to any of the issues addressed, *supra,* they are not entitled to compensatory education or attorneys' fees." [ER 32:22-24] Appellants request 14.25 hours of visual services and an order requiring staff training without any evidence of a loss of educational benefit to support the request.

### 14. PREVAILING PARTY STATUS AND ATTORNEYS' FEES

At no time has M.C. or M.N. prevailed on any issue presented for decision before the ALJ or the District Court. The OB makes essentially the same arguments before this Court. Therefore, Appellants fail to persuade they are entitled to prevailing party status and attorneys' fees.

District requests leave to file a motion for attorneys' fees and costs pursuant to CFR §300.517(a)(1)(i)(ii) and (iii), and Cal. Ed. Code § 56507(b)(2)(A)(B). DISTRICT was the prevailing party on every issue in the proceedings below, and should be the prevailing party on all issues in this appeal. At some point, it should have been clear to Student's counsel that continuing to pursue this matter was frivolous. In light of some of the specious arguments advanced by Appellants in this appeal, the only conclusion is that this action is frivolous, as were the underlying two proceedings in the eyes of any reasonable litigator and trial lawyer.

## 15. CONCLUSION

For all of the foregoing reasons, the November 27, 2012, Decision of the ALJ [ER 101-122] and the District Court's July 23, 2014 Order [ER 1-33], and all findings of fact and conclusions of law contained therein be affirmed in all respects, that judgment be in favor of appellee District and against each Appellant, or in the alternative, that the appeal be ordered dismissed, that appellee District be found to be the prevailing party on all issues on this appeal and in the proceedings below, that Appellee District be awarded its costs and attorneys fees, and Appellee District be given such other and further as the Court deems just.

Dated: February 25, 2015.

SYLVESTER, OPPENHEIM & LINDE

By: s/David Seeley
David A. Seeley
Attorneys for Defendant/Appellee
ANTELOPE VALLEY UNION HIGH SCHOOL DISTRICT

## STATEMENT OF RELATED CASES

There are no related cases.

Dated: February 25, 2015. SYLVESTER, OPPENHEIM & LINDE

By: s/ David Seeley
David Seeley.
Attorneys for Defendant/Appellee
ANTELOPE VALLEY UNION HIGH SCHOOL DISTRICT

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. This brief uses a proportional typeface and 14-point font, and contains 9260 words.

Dated: February 25, 2015. SYLVESTER, OPPENHEIM & LINDE

By: s/ David Seeley
David A. Seeley
Attorneys for Defendant/Appellee
ANTELOPE VALLEY UNION HIGH SCHOOL DISTRICT