**Case No. 14-56344**

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

M.C. BY AND THROUGH HIS GUARDIAN AD LITEM M.N.; M.N.,
*Plaintiffs-Appellants*,

v.

ANTELOPE VALLEY UNION HIGH SCHOOL DISTRICT,
*Defendant-Appellee*.

On Appeal From The United States District Court For The Central District of California, Case No. 2:13-cv-01452-DMG-MRW

## BRIEF OF *AMICI CURIAE* CALIFORNIA SCHOOL BOARDS ASSOCIATION AND EDUCATION LEGAL ALLIANCE IN SUPPORT OF PETITION FOR REHEARING *EN BANC*

Keith J. Bray
D. Michael Ambrose
CALIFORNIA SCHOOL BOARDS ASSOCIATION/ EDUCATION LEGAL ALLIANCE
3251 Beacon Blvd.
West Sacramento, CA 95691

Ronald D. Wenkart
ORANGE COUNTY DEPARTMENT OF EDUCATION

Carl D. Corbin
Jennifer E. Nix
SCHOOL AND COLLEGE LEGAL SERVICES OF CALIFORNIA
5350 Skylane Boulevard
Santa Rosa, CA 95403
Tel: (707) 524-2690
Fax: (707) 578-0517
jnix@sclscal.org

*Counsel for Amici Curiae*

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................ iii

CONSENT TO FILE ........................................................................ iv

TABLE OF AUTHORITIES ................................................................ v

IDENTITY AND INTEREST ................................................................ 1

ARGUMENT ...................................................................................... 2

I. The Panel's Decision Conflicts with Settled Ninth Circuit Law, Including, *Van Duyn ex rel. Van Duyn v. Baker School District 5J*, 502 F.3d 811 (9th Cir. 2007), Which Held that an IEP is Not a Contract and that an LEA's Failure to Implement an IEP was Not a Per Se Violation of the IDEA, and *J.L. v. Mercer Island School District*, 592 F.3d 938 (9th Cir. 2009), Which Held that Procedural Errors are not Per Se Denials of FAPE. ........................................................ 4

a. The Panel erroneously held that an IEP is a contract. ................. 5

b. The Panel erroneously concluded that the ability to "monitor" implementation of an IEP is a form of a procedural error.................. 9

c. The Panel erroneously concluded that the parent's alleged inability to monitor her child's IEP was a *per se* violation of the IDEA.................................................................................................. 12

II. The Panel's Decision Misconstrues the Holdings of the Supreme Court in *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176 (1982), and *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist.*, 580 U.S. ___, 137 S.Ct. 988 (2017), Which Set the Legal Standard for a Substantive Free Appropriate Public Education. .......................................................................................... 17

III. The Panel's Decision Involves a Question of Exceptional Importance. ......................................................................................... 19

CONCLUSION .................................................................................. 20

CERTIFICATE OF COMPLIANCE .................................................... 22

CERTIFICATE OF SERVICE........................................................................23

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rules 26.1 and 29 of the Federal Rules of Appellate Procedure, amicus curiae California School Boards Association's Education Legal Alliance ("CSBA," "ELA," or "Amicus Curiae") states that it is a nonprofit educational association organized under the laws of California as an Internal Revenue Code § 501(c)(4)/ Cal. Revenue & Tax Code § 23701f tax-exempt organization. It has no parent company and has issued no stock.

## CONSENT TO FILE

*Amici* contacted counsel for Plaintiffs-Appellants and for Defendant-Appellee and requested consent to file this brief. All parties have consented to the filing of this brief.

# TABLE OF AUTHORITIES

## CASES

*A.B. ex rel. D.B. v. Lawson*, 354 F.3d 315 (4th Cir. 2004) ....................... 19
*Amanda J. ex rel. Annette J. v. Clark Cnty. Sch. Dist.*, 267 F.3d 877 (9th Cir. 2001) ........................................................................... 13
*Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176 (1982) ........................................................ i, 9, 11, 17, 18, 19
*Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist.*, 580 U.S. ___, 137 S.Ct. 988 (2017) ........................................................... 17, 18
*Fosson v. Palace (Waterland), Ltd.*, 78 F.3d 1448 (9th Cir. 1996) ........... 9
*I.R.ex rel E.N. v. Los Angeles Unified Sch. Dist.*, 805 F.3d 1164 (9th Cir. 2015) ........................................................................... 7
*J.L. v. Mercer Island School District*, 592 F.3d 938 (9th Cir. 2009) . 4, 10, 13, 16, 19
*John A. v. Bd. of Educ. of Howard Cnty.*, 929 A.2d 136, 149-50 (Md. 2007) ........................................................................... 5
*L.M.H. v. Arizona Dep't of Educ.*, No. CV-14-02212-PHX-JJT, 2016 WL 3910940 (D.Ariz. Aug. 19, 2016) ........................................................ 15
*L.T. v. Warwick Sch. Comm.*, 361 F.3d 80 (1st Cir. 2004) ..................... 19
*Mo. Dep't of Elem. and Secondary Educ. v. Springfield R-12 Sch. Dist.*, 358 F.3d 992 (8th Cir. 2004) .............................................................. 19
*S.V. v. Sherwood School District*, 254 F.3d 877, 880 (9th Cir. 2001) ....... 6
*Swanson v. Yuba City Unified Sch. Dist.*, No. 2:14-vc-01431-KJM-DB 2016 WL 6039024 (E.D.Cal. Oct. 13, 2016) ........................................ 15
*Timothy O. v. Paso Robles Unified Sch. Dist.*, 822 F.3d 1105 (9th Cir. 2016) ........................................................................... 14
*Union Sch. Dist. v. Smith*, 15 F.3d 1519 (9th Cir. 1994) ........................ 16
*Van Duyn ex rel. Van Duyn v. Baker School District 5J*, 502 F.3d 811 (9th Cir. 2007) ........................................................... 4, 5, 6, 11, 14, 15
*Wiles v. Dep't of Educ.*, 555 F.Supp.2d 1143, 1157 (D.Haw. 2008) .......... 5

## STATUTES

Cal. Educ. Code § 56345 (2017).............................................................7
Every Student Succeeds Act, Pub.L. 114-95 (2015) ..............................20
Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-1482 (2015) ..........................................................................................2, 8
20 U.S.C. § 1414 (2015)...................................................................7, 8
20 U.S.C. § 1415 (2015)...........................................................8, 10, 13

## OTHER AUTHORITIES

*Letter to Richards*, Office of Special Educ. Programs Policy Letter, Jan. 7, 2010 (U.S. Dep't of Educ. 2010)................................................7
*Parents ex rel. Student v. Natomas Unified Sch. Dist.*, OAH Case No. 2012070797 (Nov. 20, 2012)...........................................................8
*West Covina Unified Sch. Dist. v. Parent ex rel. Student*, OAH Case No. 2008090480 (Feb. 26, 2009) ..........................................................6

## RULES

Fed.R.App.P. 35..........................................................................................3

## REGULATIONS

34 C.F.R. § 300.513 (2006) ..........................................................................13
34 C.F.R. § 300.503 (2006) ..........................................................................7

## IDENTITY AND INTEREST[1]

The California School Boards Association ("CSBA") is a non-profit, member-supported organization that advocates for and advances the interests of more than six million public school students in the state of California. Nearly all of California's 1,000 school districts and county offices of education are members. CSBA develops, communicates, and advocates the perspective of California school districts and county offices of education. The CSBA's Education Legal Alliance ("ELA"), composed of approximately 725 CSBA member districts, addresses public education legal issues of statewide concern and seeks to ensure that local school boards retain the authority to fully exercise the responsibilities vested in them by law and to make appropriate policy decisions for their local agencies.

As an advocate for its constituent members, ELA has determined that the Panel's decision will negatively impact the ability of California school districts and county offices of education to effectively address the

[1] Pursuant to Fed.R.App.P. 29(c)(5), *Amici* certify that no party's counsel authored this brief in whole or in part. Furthermore, no party, no party's counsel and no person – other than *Amici*, their members or their counsel – contributed money that was intended to fund the preparation or submission of this brief.

needs of the approximately 718,000 students in the state of California receiving special education services. The Panel's decision conflicts with settled law with respect to local educational agencies' requirements to offer students with disabilities a free appropriate public education. If the Panel's holdings are not corrected by an *en banc* panel of this Court, the abilities of local educational agencies to comply with the law regarding obligations under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-1482 (2015), will be significantly reduced by the lack of clarity inserted into the law by the Panel's decision.

## ARGUMENT

The Panel's published opinion warrants plenary review. *Amici* support Defendant-Appellee in its petition for rehearing *en banc* of *M.C. v. Antelope Valley Union High School District*, 852 F.3d 840 (9th Cir. 2017) because the Panel's decision conflicts with settled law of the U.S. Supreme Court, the Ninth Circuit, and other Circuit Courts, which will create confusion regarding the interpretation of LEAs' obligations under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-1482 (2015) ("IDEA"), with regard to Individualized Education Programs ("IEPs") and create additional litigation against Local

Educational Agencies ("LEAs").[2] Fed.R.App.P. 35(b)(1)(B). This is a matter of "exceptional importance" to California's more than six million public school students and their families and educators. *Id.*

The Panel's decision in *Antelope Valley* relies on its erroneous holding that "[a]n IEP is a contract" to find the school district liable for a *per se* violation of the IDEA. Unless corrected, the Panel's decision will confuse the legal standard determining whether a violation of the IDEA denies a student a free appropriate public education ("FAPE") by creating a conflict within the Ninth Circuit and with other Circuit Courts. Additionally, the Panel's decision sets a legal standard for a FAPE that is not consistent with the statutory language of the IDEA, the intent of Congress, the jurisprudence of the U.S. Supreme Court, or the jurisprudence of this Court. The U.S. Supreme Court has established a standard for FAPE that considered Congress's intent and the level of funding provided for implementation of the IDEA. The

[2] *Amici* fully endorse Appellee's challenge to the Panel's decision on several other grounds than those identified in this brief; however, mindful of their obligation under this Circuit's Advisory Committee Note to Rule 29-1, *Amici* do not repeat those grounds in this brief.. *See* Petn. at 1-2.

Panel's standard for FAPE is unsupportable in the public school system based on the current level of funding for obligations under the IDEA.

Each of these concerns is grounds for *en banc* consideration on its own; however, collectively, the concerns evince a need for plenary review. The Panel's contradiction of established U.S. Supreme Court and Ninth Circuit law risks increased special education litigation under the heightened standards, including over the interpretation of LEAs' obligations under state contract law and over the FAPE standard set forth by the U.S. Supreme Court.

## I. The Panel's Decision Conflicts with Settled Ninth Circuit Law, Including, *Van Duyn ex rel. Van Duyn v. Baker School District 5J*, 502 F.3d 811 (9th Cir. 2007), Which Held that an IEP is Not a Contract and that an LEA's Failure to Implement an IEP was Not a Per Se Violation of the IDEA, and *J.L. v. Mercer Island School District*, 592 F.3d 938 (9th Cir. 2009), Which Held that Procedural Errors are not Per Se Denials of FAPE.

The Panel in this case erroneously concluded, in direct conflict with existing Ninth Circuit precedent and nation-wide caselaw, that an IEP is a contract, which resulted in the Panel determining that alleged procedural errors were *per se* violations of the IDEA. These conclusions are in direct conflict with the Court's decisions in *Van Duyn* and *Mercer*

*Island*. Additionally, it appears that the Panel misclassified an implementation error as a new type of procedural error not previously recognized by this, or any other, court.

a. The Panel erroneously held that an IEP is a contract.

In *Van Duyn*, the Ninth Circuit considered, as a matter of first impression, when an alleged failure to implement an IEP would constitute a violation of the IDEA. *Van Duyn*, 502 F.3d at 818. The *Van Duyn* Court expressly articulated that "[a]n IEP is not a contract," and that "state contract law does not apply to the interpretation of an IEP." *Id.* at 819-20. The *Van Duyn* Court concluded that:

> [T]he IEP is entirely a federal statutory creation, and courts have rejected efforts to frame challenges to IEPs as breach-of-contract claims. *See, e.g.*, *Ms. K. v. City of South Portland*, 407 F.Supp.2d 290, 301 (D.Me. 2006) ("[A]n IEP is not a legally binding contract."). Van Duyn offers no example of a court treating an IEP as a contract, nor have we been able to locate any."

*Id.* at 820. Courts addressing this issue since *Van Duyn* continue to hold and/or find that an IEP is not a contract. *E.g.*, *Wiles v. Dep't of Educ.*, 555 F.Supp.2d 1143, 1157 (D.Haw. 2008); *John A. v. Bd. of Educ. of Howard Cnty.*, 929 A.2d 136, 149-50 (Md. 2007); *West Covina Unified Sch. Dist. v. Parent ex rel. Student*, OAH Case No. 2008090480, Decision

at 15 (Feb. 26, 2009)[3]. *Van Duyn* itself followed *S.V. v. Sherwood School District*, 254 F.3d 877, 880 (9th Cir. 2001), in which this Court held that it was the IDEA, not contract law, that provided the source of the school district's duty to provide special education and related services to a student.

Here, the Panel's decision holds that "[a]n IEP is a contract," which is in direct conflict with *Van Duyn*, *Antelope Valley*, 852 F.3d at 848; *Van Duyn*, 502 F.3d at 818. This holding substantially affects a rule of national application because no jurisdiction interprets an IEP using state contract law, and to do so would dramatically alter the understanding of an IEP. If the IEP truly were a contract, one party would not be able to make final decisions about its contents without consensus of the other party, and the non-consenting party could not turn to the courts to force inclusion of provisions he/she believed were required to provide a FAPE.

An IEP is a statutory right, provided for under Federal and California state law. *Sherwood Sch. Dist.* 254 F.3d at 880; Cal. Educ.

---

[3] California due process decisions are available at the website of the Office of Administrative Hearings. http://www.dgs.ca.gov/oah/SpecialEducation/searchDO.aspx

Code § 56345 (2017). An IEP offer of FAPE does not always arise from a "meeting of the minds." Although the parents are vital participants in the IEP process, the LEA has the ultimate responsibility to make an offer of FAPE. 20 U.S.C. § 1414(d) (2015). *See generally I.R.ex rel E.N. v. Los Angeles Unified Sch. Dist.*, 805 F.3d 1164 (9th Cir. 2015) (discussing a school district's obligation to offer, and to take action to implement its offer of, FAPE despite parental dissent). Although it is always preferable for an IEP team to reach a consensus on the program that will provide a student with a FAPE, if the IEP team is unable to reach a consensus, the LEA must make the decision regarding FAPE. *See* 34 C.F.R. § 300.503(a) (2006) (requiring prior written notice before the LEA proposes to initiate or change the identification, evaluation, or educational placement of the child or the provision of FAPE to the child); *Letter to Richards*, Office of Special Educ. Programs Policy Letter, Jan. 7, 2010 (U.S. Dep't of Educ. 2010) (explaining that the IEP team leader can, and should, override the consensus of the rest of the IEP team if necessary to ensure that the student is offered a FAPE).

Unlike a contract, if the parents do not believe that the contents of the IEP provide their child with a FAPE, the parents then have the

opportunity to challenge the LEA's decision via the due process procedures of the IDEA. 20 U.S.C. § 1415(b)(7) (2015). If an IEP were evaluated as if it were a fully-integrated contract, the appropriate administrative body could not order, based on a due process complaint, that the IEP be modified so that it provides the child with a FAPE. *See, e.g.*, *Parents ex rel. Student v. Natomas Unified Sch. Dist.*, OAH Case No. 2012070797, Decision at 42-43 (Nov. 20, 2012) (requiring school district to make at least ten types of changes to all of its current IEPs).

Moreover, an eligible child with a disability has a right under Federal and state law to an IEP that provides FAPE, and the LEA has an obligation to provide such an IEP and a FAPE to that child. *See generally* IDEA, 20 U.S.C. §§ 1400-1482. The parents have no affirmative obligations in the IEP drafting process, nor do they have any affirmative obligations with regard to implementation of the IEP. *See* 20 U.S.C. § 1414(d)(3) (2015) (requiring "the IEP Team" to develop the IEP). Thus, the IEP process is distinct from contract law in that only one party is obligated to execute responsibilities in good faith—the LEA—and there is no requirement of mutual satisfaction of the conditions of the IEP. *See Fosson v. Palace (Waterland), Ltd.*, 78 F.3d

1448, 1454 (9th Cir. 1996) ("In California, the doctrine of mutuality of obligation requires that the promises on each side of a contract must be binding obligations in order to be consideration for each other.").

Accordingly, *Amici* request that the Court grant *en banc* review of the Panel's decision to permit the Court to clarify whether an IEP is or is not a contract subject to interpretation under state contract law. Notably, *Amici* believe that the Court's erroneous decision that an alleged procedural error resulted in a *per se* violation of the IDEA, as discussed *infra* in Section 1(c), flowed from its initial misunderstanding of the IEP as a contract.

b. The Panel erroneously concluded that the ability to "monitor" implementation of an IEP is a form of a procedural error.

In determining whether an IEP is appropriate, hearing officers and courts consider both procedural and substantive components of the IEP. The U.S. Supreme Court explained the difference *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206-07 (1982), when it held that a court's inquiry in due process complaints involves: (1) has the LEA complied with the procedures set forth in the IDEA? (2) Is the IEP, developed through the procedures set forth in the

IDEA, reasonably calculated to enable the child to receive educational benefit? The 2004 Amendments to the IDEA clarified that procedural violations only deny a child a FAPE if the procedural error: (1) impeded the child's right to a FAPE; (2) "significantly impeded the parents' opportunity to participate in the *decisionmaking process* regarding the provision of [FAPE] to the parents' child;" or (3) caused a deprivation of educational benefits. 20 U.S.C. § 1415(f)(3)(E)(ii)(III) (2015) (emphasis added).

Here, the Panel concluded that "[p]arents must be able to use the IEP to monitor and enforce the services that their child is to receive," and that an error in the IEP document that affects how a parent can monitor provision of services denies the student a FAPE "whether or not the parent had ample opportunity to participate in the formulation of the IEP." *Antelope Valley*, 852 F.3d at 849. This holding conflicts with both Federal law, which indicates a procedural error occurs when the parents are unable to participate in the "decisionmaking process," 20 U.S.C. § 1415(f)(3)(E)(ii)(III), and with Ninth Circuit caselaw, which indicates that a procedural error occurs when the parents are unable to participate in the "IEP formulation process," *Mercer Island*, 592 F.3d

at 952-53 ("Not only did Parents actively participate in the individualized educational program formulation process, the District changed various aspects of the program based on the recommendations of Parents and [their expert].").

Importantly, the Panel concluded that the new right it was according parents—the right to "monitor and enforce" IEP services[4]—was a procedural error, when, in fact, such an error would be encompassed under existing caselaw on implementation errors.[5] The Ninth Circuit has previously rejected a parent's argument that an implementation error was actually a procedural error. The *Van Duyn* Court considered the parents' argument that, by failing to implement portions of the student's IEP, "the District 'changed' the IEP without notifying his parents in advance—a violation of the IDEA's procedural requirements for the formulation and revision of IEPs." *Van Duyn*, 502 F.3d at 819 ("Van Duyn's procedural argument thus boils down to the novel proposition that failures to *implement* an IEP are equivalent to

[4] *Amici* could not locate another court case that references such a right, nor is such a right contained in Federal or California state law.

[5] A parent's act of monitoring and enforcing a child's IEP would go directly to the question of whether or not the child's IEP was reasonably calculated to enable the child to receive educational benefit. *See Rowley*, 458 U.S. at 206-07.

*changes* to an IEP." (italics in original)). The *Van Duyn* Court found that an implementation failure was not a procedural error, holding instead such a failure went to whether the IEP provided the student with a substantive FAPE. *Id.* (noting that the school district's failure was in implementing the IEP "not [a] surreptitious attempt[] to alter it.").[6]

Accordingly, the Panel's decision conflated the law with regard to procedural and substantive violations of the IDEA when it held that parents have the right to "monitor and enforce" implementation of an IEP, and that a parent's inability to do so could result in a procedural violation of the IDEA. This issue will affect the standard of review for similar errors in the future; specifically, whether such error is reviewed for a denial of FAPE as a procedural or a substantive error.

c. The Panel erroneously concluded that the parent's alleged inability to monitor her child's IEP was a *per se* violation of the IDEA.

The Panel's decision with respect to parent's ability to "monitor and enforce the services that their child is to receive," conflicts with

---

[6] The Panel in this case implied similar ill intent to the District with regard to an IEP drafting error that was related to a software malfunction. *Antelope Valley*, 852 F.3d at 848-49 & n.5.

unambiguous law that neither a procedural nor a substantive error can be a *per se* violation of the IDEA that results in a denial of FAPE.

This Court has held, in accordance with 20 U.S.C. § 1415(f)(3)(E)(ii)(III) and 34 C.F.R. § 300.513(a)(2) (2006), that a procedural error is not a *per se* denial of FAPE. In *Mercer Island*, this Court held that "not every procedural violation results in the denial of a [FAPE]." *Mercer Island*, 592 F.3d at 953. Rather, a procedural violation denies a student a FAPE only "if it results in the loss of an educational opportunity, seriously infringes the parents' opportunity to participate in the *IEP formulation process* or causes a deprivation of educational benefits." *Id.* (emphasis added); *see also Amanda J. ex rel. Annette J. v. Clark Cnty. Sch. Dist.*, 267 F.3d 877, 892 (9th Cir. 2001) (requiring a determination of whether a procedural violation is "sufficient to support a finding that the child in question was denied a FAPE"); *Timothy O. v. Paso Robles Unified Sch. Dist.*, 822 F.3d 1105, 1124 (9th Cir. 2016) ("While some procedural violations of the IDEA may be harmless, such errors constitute a denial of a free appropriate public education if they seriously impair the parents' opportunity to participate in the IEP formulation process, result in the loss of

educational opportunity for the child, or cause a deprivation of the child's educational benefits."). Thus, this Court has negated the concept of a *per se* violation of the IDEA when a procedural violation has occurred.

Additionally, with respect to errors of implementation of the IEP, the *Van Duyn* Court concluded that only "a material failure to implement an IEP violates the IDEA." *Van Duyn*, 502 F.3d at 822.[7] In so holding, the Court stated:

> "There is no statutory requirement of perfect adherence to the IEP, nor any reason rooted in the statutory text to view minor implementation failures as denials of free appropriate public education."

*Id.* at 821. Both *Van Duyn* and *Mercer Island* are frequently cited by the District Courts in this Circuit for their propositions that procedural and/or substantive violations of the IDEA are not *per se* denials of FAPE. *E.g.*, *L.M.H. v. Arizona Dep't of Educ.*, No. CV-14-02212-PHX-

[7] The Court specifically considered, and rejected, the argument that an implementation failure would be a *per se* violation. *See Van Duyn*, 502 F.3d at 826-27 (Ferguson, J., dissenting) ("Given the extensive process and expertise involved in crafting an IEP, the failure to implement *any* portion of the program to which the school has assented is *necessarily* material." (italics in original)).

JJT, 2016 WL 3910940, at *7 (D.Ariz. Aug. 19, 2016) (relying on the *Van Duyn* standard); *Swanson v. Yuba City Unified Sch. Dist*., No. 2:14-vc-01431-KJM-DB 2016 WL 6039024, *4 (E.D.Cal. Oct. 13, 2016) (relying on the *Mercer Island* standard).

However, despite the holdings in *Van Duyn* and *Mercer Island*, and appearing to rely on concepts from contract interpretation, the Panel in this case held that the District's alleged unilateral change to the student's IEP was "a per se procedural violation of the IDEA because it vitiates the parents' right to participate at every step of the IEP drafting process." *Antelope Valley*, 852 F.3d at 848; *see also id.* ("It is signed by the child's parents and the school's representatives, and thus embodies a binding commitment. . . . The school district is not entitled to make unilateral changes to an IEP document any more than may any other party to a contract."). The Panel also stated that: "When a parent is unaware of the services offered to the student—and, therefore, can't monitor how these services are provided—a FAPE has been denied, whether or not the parent had ample opportunity to participate in the formulation of the IEP." *Id.* at 849. This duty goes above and beyond an LEA's obligation to make a clear offer of FAPE

and instead looks to how the LEA is implementing its offer of FAPE. *See Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1526 (9th Cir. 1994) (requiring that LEAs make a formal written offer that clearly identifies the proposed program regardless of a parent's willingness to accept that offer). Additionally, this duty is in direct conflict with *Mercer Island*, 592 F.3d at 952-53, as discussed *supra* on pages 10-11.

In sum, the Panel's decision flowed from a misunderstanding of an IEP as a contract. With good reason, neither this Court nor any other Circuit Court has applied state contract law to IEPs developed under the IDEA because the IEP process is a Federal statutory process set forth in the IDEA that provides legal right to a FAPE to an eligible student and his/her parent or guardian and imposes obligations on LEAs to provide such a FAPE. In the IEP process there are no obligations on the student or parent, unlike the contract formation process that requires an offer, acceptance, and consideration. Thus, no "contract" is formed through the IEP process, and an IDEA violation would not be a *per se* violation of said "contract."

## II. The Panel's Decision Misconstrues the Holdings of the Supreme Court in *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176 (1982), and *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist.*, 580 U.S. ___, 137 S.Ct. 988 (2017), Which Set the Legal Standard for a Substantive Free Appropriate Public Education.

The Panel's decision adopted a standard for FAPE that has been rejected by the U.S. Supreme Court in *Rowley* and *Endrew F*. In *Endrew F.*, 137 S.Ct. at 999, the U.S. Supreme Court clarified that, to meet its substantive obligation under the IDEA, an LEA must offer an IEP that is reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances.

In the case at bar, however, the Panel held that LEAs must remediate and accommodate students so that students with disabilities can make progress commensurate with their non-disabled peers, taking into account the child's potential. *Compare Antelope Valley*, 852 F.3d at 852 (holding that "the school must implement an IEP that is reasonably calculated to remediate and, if appropriate, accommodate the child's disabilities so that the child can 'make progress in the general education curriculum,' [*Endrew F.*, slip op. at 4], commensurate

with his non-disabled peers, taking into account the child's potential"), *with Rowley*, 458 U.S. at 198 ("[T]he requirement that a State provide specialized educational services to handicapped children generates no additional requirement that the services so provided be sufficient to maximize each child's potential 'commensurate with the opportunity provided other children.'"). In *Endrew F.*, the U.S. Supreme Court expressly rejected the Panel's standard, which also had been proposed by the parents of Endrew F. Specifically, Endrew F.'s parents argued that a FAPE should provide a child with a disability opportunities to achieve academic success, attain, self-sufficiency, and contribute to society that are substantially equal to the opportunities afforded children without disabilities. *Endrew F.*, 137 S.Ct. at 1001. The *Endrew F.* Court rejected this argument, stating that "[t]his standard is strikingly similar to the one the lower courts adopted in *Rowley* . . . . But the majority rejected any such standard in clear terms." *Id.* The *Endrew F.* Court "decline[d] to interpret the FAPE provision in a manner so plainly at odds with the Court's analysis in [*Rowley*].[8] *Id.*;

[8] The Ninth Circuit has repeatedly held that the *Rowley* standard remains unchanged. *E.g.*, *Mercer Island*, 592 F.3d at 950. This is in line with other Circuit Courts, which have refused to require school

*see Rowley*, 458 U.S. at 197 n.21 ("Whatever Congress meant by an "appropriate" education, it is clear that it did not mean a potential-maximizing education.").

By incorrectly interpreting the standard provided in *Endrew F.* and *Rowley*, the Panel set a standard for LEAs in the Ninth Circuit that is unworkable and inconsistent with the IDEA. An *en banc* hearing would correct this error and allow the Court to issue a decision that maintains a uniform legal obligation and a consistent standard with regard to the provision of FAPE.

## III. The Panel's Decision Involves a Question of Exceptional Importance.

*Amici*'s member districts serve over six million students in the state of California. *Amici* and their members believe that all children should have equal access to education that allows all students to

---

districts to "maximize" or "take into account" the child's "potential" and/or to "remediate" or "accommodate" a disabled child so that the child makes progress "commensurate" with his/her non-disabled peers. *E.g.*, *L.T. v. Warwick Sch. Comm.*, 361 F.3d 80, 83 (1st Cir. 2004) (rejecting a "maximum benefit" standard); *A.B. ex rel. D.B. v. Lawson*, 354 F.3d 315, 319 (4th Cir. 2004) (holding that the IDEA does not guarantee "the best education that money can buy"); *Mo. Dep't of Elem. and Secondary Educ. v. Springfield R-12 Sch. Dist.*, 358 F.3d 992, 990 n.7 (8th Cir. 2004) (rejecting a "maximize the capabilities" standard).

progress educationally. Congress's intent with the IDEA and the Every Student Succeeds Act, Pub.L. 114-95 (2015), was to defer to state and local educational agencies with regard to the task of improving educational outcomes for *all* children. By establishing legal standards that increase LEAs' obligations under the IDEA as discussed in *Rowley* and *Endrew F.*, the Panel's decision creates an unfunded mandate, which is in violation of the Spending Clause of the U.S. Constitution. Additionally, the inconsistent legal standard will lead to confusion, uncertainty, and costly and needless litigation that will claim much needed funds from public education and will increase the burden on the Federal courts.

## CONCLUSION

For the foregoing reasons, *amicus curiae* the California School Boards Association and the Education Legal Alliance respectfully request that this Court grant the petition for rehearing *en banc*.

Respectfully submitted,

/s/ Jennifer E. Nix
Jennifer E. Nix
Carl D. Corbin
SCHOOL AND COLLEGE LEGAL SERVICES OF CALIFORNIA
5250 Skylane Boulevard
Santa Rosa, CA 95403
Tel: (707) 524-2690
Fax: (707) 578-0517
jnix@sclscal.org

Keith J. Bray
D. Michael Ambrose
CALIFORNIA SCHOOL BOARDS ASSOCIATION/EDUCATION LEGAL ALLIANCE
3251 Beacon Blvd.
West Sacramento, CA 95691

Ronald D. Wenkart
ORANGE COUNTY DEPARTMENT OF EDUCATION
200 Kalmus Drive
Costa Mesa, CA 92626

Date: May 4, 2017

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitations permitted by Ninth Circuit Rule 29-2(c)(2) because it contains 4,198 words excluding the portions of the brief exempted by Fed.R.App.P. 32(f).
2. This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type-style requirements of Fed.R.App. P. 32(a)(6) because it is prepared in a 14-point proportionally spaced typeface, New Century Schoolbook, using Microsoft Word.

May 4, 2017

/s/ Jennifer E. Nix
Jennifer E. Nix

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system on May 4, 2017.

I certify that all participants in the case are registered CM/ECF users and that services will be accomplished by the appellate CM/ECF system.

May 4, 2017

/s/ Jennifer E. Nix
Jennifer E. Nix